IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHEET METAL WORKERS' LOCAL 73 )
WELFARE FUND BOARD OF TRUSTEES, )
and JOSEPH OHM, Fund Administrator,)
)
        Plaintiffs, )
)
  v. )   No. 06 C 6340
)
CHARLES W. DeGRYSE, III, )
a/k/a Charles W. DeGryse, )
)
        Defendant. )

## OPINION AND ORDER

Plaintiffs, the trustees and administrator of the Sheet Metal Workers' Local 73 Welfare Fund (the "Fund"), have moved for summary judgment against defendant Charles W. DeGryse, a Fund participant. The Complaint states that the Fund paid disability benefits and medical expenses for injuries to defendant arising out of an accident, and that defendant later obtained a workers' compensation settlement related to the same injuries. The Fund has brought suit pursuant to § 502(a)(3) of the Employee and Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). Count I contains this federal ERISA claim. Plaintiffs assert the right to a refund of all the benefits the

Fund paid to defendant. One form of relief that is sought is in the form of an equitable lien on the portion of the workers' compensation settlement equal to the amount of benefits paid. To the extent plaintiffs seek to enforce a lien on the settlement funds, they pursue equitable relief that may be pursued under ERISA. See Sereboff v. Mid Atl. Med. Serv., Inc., 126 S. Ct. 1869, 1873-76 (2006). To the extent, regardless of any lien on the workers' compensation settlement funds, plaintiffs seek to enforce a right to reimbursement of benefits paid out that were contrary to the terms of the Fund's Plan (the "Plan"), that is a legal claim based on contract, restitution, or unjust enrichment, not an equitable claim for which § 1132(a) would provide federal jurisdiction. See id. at 1874; Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210-13 (2002). However, although ERISA does not provide for federal court jurisdiction over a claim for reimbursement based on the benefit terms of the Plan not providing coverage, such a claim is still a federal claim, not a state law claim. It is not preempted by § 514 of ERISA, 29 U.S.C. § 1144, and supplemental jurisdiction over such a claim may be exercised in appropriate circumstances. See Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409-10 (7th Cir. 2004); Smith v. Accenture U.S. Group Long-Term Disability Ins. Plan, 2006 WL 2644957 *2-3 (N.D. Ill. Sept. 13, 2006); Providence Health

System-Washington v. Bush, 461 F. Supp. 2d 1226, 1237 (W.D. Wash. 2006). Here, this legal claim theory, which is incorporated in Count I, is part of the same case or controversy as the equitable claim and it is appropriate to exercise supplemental jurisdiction over it. See 28 U.S.C. § 1367. Count II contains a contract claim based on a written reimbursement agreement between the parties. That is a separate state law contract claim not preempted by ERISA, cf. Plumbers & Steamfitters Local 298 Jurisdiction Pension Plan v. Triton Plumbing & Sewer Contractors, Inc., 2007 WL 2570374 (E.D. Wis. Sept. 4, 2007), and also properly before the court based on supplemental jurisdiction. The Fund paid a total of $24,037.61 to or on behalf of defendant. Plaintiffs have moved for summary judgment on all aspects of Count I of their Complaint.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Creditor's Comm. of Jumer's Castle

Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hicks, 500 F.3d at 651; Jumer, 472 F.3d at 946. The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95 (7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir. 1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir. 1988); Freundt v. Allied Tube & Conduit Corp., 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th

Cir. 1996) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" <u>Logan</u>, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." <u>Id.</u> (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." <u>McGinn v. Burlington Northern R.R. Co.</u>, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" <u>Logan</u>, 96 F.3d at 978 (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

<u>Outlaw</u>, 259 F.3d at 837.

The parties have filed Local Rule 56.1 statements from which it appears that the undisputed facts are as follows.

As an employee of McCauley Mechanical Construction, defendant is a participant in the Fund's programs and benefits. The Fund's Plan provides disability and medical benefits to its participants, but specifically excludes benefits from "any accidental bodily injury or sickness arising out of or in the course of employment, or which is compensable under any Workers' Compensation or Occupational Disease Act or law."

On November 3, 2000, defendant injured his right arm, shoulder, and rotator cuff. On this motion for summary judgment, there is no genuine factual dispute that this injury occurred during the course of defendant's employment. However, defendant's claim for disability and medical expenses initially was denied by his employer's workers' compensation carrier as not having arisen out of his employment. Defendant then made a claim for benefits from the Fund and also filed a claim with the Illinois Industrial Commission.

In instances in which workers' compensation is denied or in dispute, the Fund will provide benefits to a participant subject to a right of subrogation. The Plan provides in part:[1]

> If the Welfare Fund pays benefits to or for you, your dependent, your estate or your dependent's estate as a

---

[1] The quoted provisions are those in effect in 2003 and later. A prior version of the Plan was substantively the same.

result of an Accident, injury, or illness for which any third party is or may be liable, the Fund has a right of reimbursement from any settlement, judgment, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.

In addition, the Fund will have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.

\* \* \*

In the event that you, your dependent or estate fails to timely inform the Fund of any recovery, the Fund shall have a right of reimbursement from you, your dependent, or estate for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of actual recovery.

The Plan also contains the following provisions titled "Workers' Compensation Claims Procedures."

In cases where a member also has a **WORKERS' COMPENSATION CLAIM** which may affect payment under this Plan:
   1. He must promptly notify the Fund Office in the manner designated by the Welfare Fund Office that he has filed a workers' compensation claim.
   2. The Welfare Fund Office will verify that benefit claims made were not paid under the workers' compensation claim and that such benefits are provided under the Plan.
   3. The Welfare Fund Office will pay the covered benefit claims/expenses not paid by workers' compensation as long as those benefit claims are filed with the Welfare Fund Office within 6 months of the settlement date of a member's workers' compensation claim.
   4. The member must comply with all applicable Subrogation provisions outlined in Section 4.12.

On February 13, 2001, the Fund entered into an agreement with defendant that provides in part as follows:

> This Agreement must be signed and returned to the [Fund] before payment of any claim arising from an accident injury or illness.
> * * *
> Date of Accident/Injury: 11/03/00 I.C. Case #01 WC 07433
>
> Description of Accident/Injury: Right shoulder, hip and groin
>
> Per your request to the Fund Office for subrogation of the above-mentioned, please be advised that this agreement is pertinent to medical, hospital and temporary disability benefits paid on your behalf.
> * * *
> In consideration of benefits paid or payable by the Fund for charges incurred by the Employee . . . as a result of the above-described accident, injury or illness; and in consideration of the terms and conditions contained in this Agreement, the parties agree as follows:
>
> 1. *Reimbursement.* In the event any third party is or may be liable for the above-described accident, injury or illness, the Fund shall have a right of reimbursement, and the Employee, dependent, or any related estate shall reimburse the Fund, from any settlement, judgment, insurance proceeds, no-fault automobile insurance payments or other recovery, for any and all benefits paid in connection with such accident, injury or illness, up to the amount of recovery. Provided, however, that the Fund will pay a proportionate share of attorney's fees and costs incurred in recovery of said amount not to exceed the lesser of: (I) the amount provided in any fee agreement between the participant and the procuring attorney; or (ii) one third (1/3) of the amount recovered and paid to the Fund.
>
> 2. *Lien.* The Fund shall have a lien upon any such settlement, judgment insurance proceeds, no-fault automobile insurance payments, or other

recovery, in the amount of all benefits paid up to the amount of recovery. Provided, however, that upon compliance with the terms of the Plan and this Agreement and reimbursement satisfactory to the Fund, the Fund shall release its lien with regard to the amount of attorney's fees and costs provided for in Paragraph 1.

\* \* \*

5. *Remedies.* In the event that reimbursement is not made as provided in this Agreement or in the [Plan], the Fund has the right to withhold any future benefits . . . until the Fund has been reimbursed. In the event that the Employee . . . fails to timely inform the Fund of any recovery, the Fund shall have a right of reimbursement from the Employee . . . for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of the actual recovery. No remedy herein conferred upon any party is intended to be exclusive of any other remedy given hereunder or now or hereafter existing at law or inequity [sic] or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

\* \* \*

8. *Expenses of Enforcement.* In the event that any legal action is necessary to enforce any provision of this Agreement, the prevailing party shall recover from the other party all reasonable costs and expenses, including but not limited to reasonable attorney's fees and other legal fees, incurred by the prevailing party in connection with such legal action.

\* \* \*

10. *Interpretation.* The parties to this Agreement expressly agree that this Agreement shall be interpreted and construed in accordance with its fair meanings, and not strictly for or against either party.

Beginning in February 2001 and ending in June 2001, the Fund paid weekly disability benefits to defendant totaling

$7,038.46 and medical expenses in the amount of $16,999.15. Benefits totaled $24,037.61.

On or about November 25, 2002, defendant entered into settlement of his workers' compensation claim. The settlement recited that his employer denied liability, but entered into the settlement to avoid litigation. The Industrial Commission petition and order states: "The settlement represents 30% loss of use of the Petitioner's [defendant's] right arm and payment in the amount of 14-5/7 weeks of disputed temporary disability benefits. Petitioner acknowledges that he has received a total of $8,258.40 in advances which he shall retain in addition to the $48,000.00 to be paid pursuant to this agreement." From the $48,000, there was a deduction of $9,600 (20%) for attorney fees and $506 for medical reports resulting in total payments to defendant in the amount of $46,152.40. On their motion for summary judgment, plaintiffs do not contend that there is undisputed evidence that any portion of the settlement represented medical expenses that defendant had incurred.

Defendant concedes that he has received workers' compensation disability benefits which makes him obligated to refund disability payments to the Fund, but claims there should be a deduction for attorney fees.[2] Defendant contends he is not

---

[2]On July 20, 2007, pursuant to Fed. R. Civ. P. 68, defendant offered judgment in the amount of $5,560.38 representing the amount of Fund disability payments, less a

obligated to refund payments for medical expenses because (a) other provisions of the Plan are inconsistent with the employment-injury exclusion and (b) a "make whole" construction should be applied to the Plan's subrogation provisions.[3]

In their opening brief, plaintiffs address the merits of their claim de novo. In their reply, plaintiffs argue for the first time that their decision is subject to deferential review. Since not raised in their opening brief, plaintiffs have waived the opportunity to rely on deferential review in support of their pending summary judgment motion. See St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 627-28 (7th Cir. 2007); Smith v. Astrue, 2008 WL 794518 *12 (E.D. Wis. March 24, 2008).[4]

---

proportionate share of attorney fees in the compensation case. Plaintiffs note that attorney fees were not charged against defendant's disability payments. The offer was not accepted within 10 days thereafter and is deemed withdrawn pursuant to Rule 68.

[3] Defendant also contends a "make whole" construction should be applied to the parties' reimbursement agreement. Plaintiffs, however, only seek summary judgment on their Count I claim; on the present motion, they do not seek to enforce the reimbursement agreement. Defendant does not presently argue, nor did he assert as an affirmative defense, that any claim directly enforcing terms of the Plan is waived as having been resolved by the parties' reimbursement agreement, leaving plaintiffs with only a state law contract claim to pursue. The remedies provision of the reimbursement agreement (¶ 5) may be read as still allowing the Fund to pursue statutory or other claims that exist separate from the reimbursement agreement.

[4] Even if this argument were to be considered, plaintiffs do not support it factually since they do not provide the provisions of the Plan giving the trustees or administrator discretion to construe terms of the Plan.

Construction and application of the Plan's terms will be considered de novo. Such consideration would require that any genuine ambiguities in the terms of the Plan be construed against the Fund. Phillips v. Lincoln Nat'l Life Ins. Co., 978 F.2d 302, 311-12 (7th Cir. 1992); Pitcher v. Principal Mut. Life Ins. Co., 93 F.3d 407, 418 (7th Cir. 1996); Hopkins v. Prudential Ins. Co. of America, 432 F. Supp. 2d 745, 758, 762-63 (N.D. Ill. 2006).

In unambiguous terms, the Plan excludes any benefits for accidental bodily injury arising out of or in the course of employment. There is no genuine factual dispute that defendant's medical and disability benefits arose from an injury that occurred in the course of employment. Defendant, though, contends that this provision should be read in light of other Plan provisions concerning procedures when a workers' compensation claim is pending. This argument ignores the "or" contained in the exclusion. Excluded are benefits either arising from an employment injury or for which compensation is available under a workers' compensation statute. Since defendant's benefits fall under the first clause, the workers' compensation aspect need not be considered.

Even if the employment-injury clause should also be considered in light of the workers' compensation procedures, the latter are no sufficient basis for construing the Plan in a manner that would allow defendant to avoid the exclusion. The

workers' compensation procedures are a procedure for providing temporary benefits while it is determined whether the participant's injuries are compensable under a workers' compensation statute. If compensable under a workers' compensation statute, they are not compensable under the Plan and the participant must reimburse the Fund. If not compensable under a workers' compensation statute,[5] the participant may keep the benefits as long as the benefits are not otherwise excluded or fail to meet other Plan requirements. That does not make the provisions of the workers' compensation procedures illusionary or inconsistent with other provisions of the Plan. These provisions allow the participant to receive payments while the participant's related workers' compensation claim is being processed, thereby helping to avoid impoverishment during the interim. If the workers' compensation claim is eventually denied on the merits, then the participant keeps the payments that have made absent some other ground for returning benefits. If the workers' compensation claim is granted, then the participant must return the benefits that have been paid by the Fund.

---

[5] Simply having a workers' compensation claim denied is not necessarily enough. For example, having the claim denied based on being untimely does not necessarily mean the injuries were not compensable under a workers' compensation statute.

Since benefits for defendant's work injuries were excluded under the Plan, the Fund is entitled to reimbursement for the benefits it paid.

Since the employment-injury exclusion unambiguously establishes the defendant was not entitled to benefits from the Fund, it is unnecessary to reach defendant's make-whole contentions. Circuits are split on those issues. Some circuits hold that the make-whole rule for interpreting subrogation provisions is part of federal common law under ERISA, while others hold that it is not. See Moore v. CapitalCare, Inc., 461 F.3d 1, 9 (D.C. Cir. 2006) (collecting cases). The Seventh Circuit has not yet reached this issue. See Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1298-99 (7th Cir. 1993).[6] If it were to be held that the make-whole rule for interpreting subrogation provisions is incorporated in federal common law, it is also not clear that the language of the Plan--"the Fund has a right of reimbursement from any settlement, . . . or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery"--is sufficient to override

---

[6]In Cutting, the Seventh Circuit held that, on deferential review, a Plan fiduciary could construe similar Plan language as not incorporating a make-whole limitation. Here, it has not been shown that deferential review applies.

a make-whole construction of the Plan provision. Compare Cutting, 993 F.2d at 1295, 1298-99 (provision that "Plan shall be subrogated to all claims . . . and rights of recovery of the individual against any third party . . . to the extent of any and all payments made . . . by the Plan" was not clear enough to override a make-whole interpretation if such a rule applied under ERISA); Moore, 461 F.3d at 10 ("Participant shall pay the Corporation all amounts recovered by suit, settlement, or otherwise from any third party . . . to the extent of the benefits provided by this Contract" sufficiently clear to override application of a make-whole construction). It is unnecessary to resolve the make-whole issues raised by defendant. It is only being noted that these are substantial issues on which reasonable persons can disagree.

Still to be considered is plaintiffs' request for attorney fees. Plaintiffs rely on two different attorney fees provisions. One is the provision of the Plan that provides: "In the event that you . . . fail[ ] to timely inform the Fund of any recovery, the Fund shall have a right of reimbursement from you . . . for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of actual recovery." There is no evidence or factual

assertion that defendant failed to timely inform the Fund regarding his recovery. This is not a basis for awarding attorney fees.

The other provision relied upon by plaintiffs is the attorney fee provision of ERISA. See 28 U.S.C. § 1132(g)(1). Under that provision, the prevailing party is entitled to attorney fees unless the losing party's position was substantially justified. See Sullivan v. William F. Randolph, Inc., 504 F.3d 665, 670-72 (7th Cir. 2007). While this court holds that the Fund is entitled to full recovery, it will exercise its discretion to deny attorney fees for this proceeding. Plaintiffs have benefitted from defendant's action before the Industrial Commission. Defendant has incurred attorney fees before the Industrial Commission in which plaintiffs will not have to share. Defendant has had only a modest recovery and has limited ability to satisfy any additional award of attorney fees. Defendant made non-frivolous, substantially justified arguments before this court and presented his position efficiently. Under these circumstances, the judgment will be limited to full recovery of the benefits paid by the Fund.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment [30] is granted in part and denied in part. The Clerk of the Court is directed to enter judgment in favor of plaintiffs and against defendant in the amount of $24,037.61. It is further ordered that plaintiffs are awarded costs of this lawsuit and are denied attorney fees.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: APRIL 17, 2008